UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No: 1:11-cv-234

| | |
|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **BRIEF IN SUPPORT OF**<br>) **DEFENDANT'S MOTION TO**<br>) **DISMISS** |
| WILLIAM G. GRAY, | )<br>) |
| Defendant. | ) |

Defendant has moved the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's action on the ground it fails to state a claim upon which relief can be granted, and in support thereof, shows the following:

## ALLEGATIONS OF THE COMPLAINT

Plaintiff, Harleysville Mutual Insurance Company (hereafter "Plaintiff" or "Harleysville"), alleges that it issued a policy of fire insurance to The Hammocks, LLC for property known as the Richmond Hill Inn, located in Asheville, North Carolina. (Complaint, paragraph 7). The property sustained a fire loss on or about March 19, 2009. (p 12). The fire loss is the subject of another suit pending in this Court, styled as <u>The Hammocks, LLC d/b/a Richmond Hill Inn v. Harleysville Mutual Insurance Company,</u> Civil Case No. 1:10cv22 (hereafter "Other Action") In the Other Action, The Hammocks, LLC alleges that Harleysville Mutual Insurance Company's denial of its claims constitute breach of contract, bad faith and unfair and deceptive trade acts (Complaint, paragraphs, 95, 96). Furthermore, Plaintiff generally avers that Defendant, Dr. Gray, committed arson and fraud in connection with the insurance policy and fire loss at Richmond Hill Inn. Consequently, Plaintiff concludes that it is entitled to

1

recover from Defendant its alleged "costs and fees incurred by way of defending its denial of coverage" in the Other Action, and if The Hammocks, LLC recovers, then "Dr. Gray must reimburse Harleysville for any and all claim payments made to The Hammocks." (Complaint, paragraphs, 109, 110). The alleged theories of recovery are arson, fraud and violation of criminal statute NCGS §58-2-161 (Complaint, paragraphs, 103-125).

## STANDARD OF REVIEW

As this Court has recognized previously, there has been a shift in the standard of review for 12(b)(6) motions. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.ed.2nd 929 (2007) the United States Supreme Court held: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (citations omitted) a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do..... (citation omitted) Id. at 1964,1965. Further, in discussing the Twombly decision, the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2nd 868 (2009), explained:

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line

2

between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted)" *Id*. at 1949.

## DISCUSSION OF ALLEGATIONS:

**I.   ALLEGED ARSON:**

The basis upon which a casualty insurer can recover from a tortfeasor is through subrogation. In Milwaukee Insurance Company v. McLean Trucking Company, 256 NC 721, 725, 125 S.E.2nd 25, 28 (1962), the North Carolina Supreme Court held:

> "The general rule is that upon payment of a loss, pursuant to the terms of its contract of insurance, the insurer, or insurers in the case of coinsurance, are entitled to be subrogated pro tanto to any right of action which the insured may have against a third party whose negligence or wrongful act caused the loss. The right of an insurer to be thus subrogated to the rights of the insured may be either the right of conventional subrogation--that is, subrogation by agreement between the insurer and the insured--or the right of equitable subrogation, by operation of law, upon the payment of the loss.  Smith v. Pate, supra; Underwood v. Dooley, supra;   Lumberman's Mut. Insurance Co. v. Southern R. R., 179 N.C. 255, 102 S.E. 417; Cunningham v. Seaboard Air Line R. R., supra; 29A Am.Jur., Insurance, sec. 1719."

A critical component of subrogation is that the insurance company actually has paid the loss.  In this action, Plaintiff merely alleges, "If this Court were to determine" that Harleysville must provide coverage, then "Dr. Gray must reimburse Harleysville for any and all claim payments that are made to The Hammocks."  There is no right to subrogation without payment on the policy, regardless of any other circumstances alleged.

3

## II.   ALLEGED FRAUD/PUNITIVE DAMAGES

The insurance contract is between the insured, The Hammocks, LLC, and the insurer, Harleysville. While perhaps The Hammocks owed duties to the insurer regarding representations concerning the contract or the loss, these were not duties which Dr. Gray, individually, owed to the insurance company. Plaintiff has not alleged privity of contract between Dr. Gray and Harleysville. In Fidelity Ins. Co., et al v. Atlantic Coast Line R. Co., 165 NC 136, 80 S.E. 1069, 1070 (1914), the North Carolina Supreme Court reviewed a claim which a casualty carrier brought against the alleged tortfeasor, but held:

> "There is no privity or legal relation between the insurer and the tort-feasor, and every right the former can possibly acquire must come through the insured, and is subject to every defense and limitation which could be interposed against the owner of the property. The rights of the underwriter cannot be greater nor different than those of the insured. This appears to be well established by all the authorities. 27 Am. & Eng. Ency. 263; 37 Cyc. 385."

See also, Dagley v. Haag Engineering Co., 18 S.W.3d 787 (Ct of App-Tex 2000), wherein the insureds brought an action against an engineering firm to recover damages for its participation in the denial of claims by the homeowners insurance company. The Texas court held in part:

> "The duty of good faith and fair dealing emanates from the special relationship between an insurer and its insured. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 697–98 (Tex.1994). The special relationship exists because the insured and the insurer are parties to a contract that is the result of unequal bargaining power. *See id.* at 698. Without such a contract, there is no special relationship. *See id.* Absent privity of contract with the insured, an insurance carrier's agents or

4

contractors owe no such duty to the insured. *See id.*" *Id.* at 790.

The statutory standard fire policy at NCGS §58-44-16 addresses the effect of misrepresentation:

> "Concealment or fraud.--This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of this insurance, or the interest of the insured in the subject of this insurance, or in the case of any fraud or false swearing by the insured relating the subject of this insurance."

It does not provide a private cause of action for investigative expenses, litigation costs or attorney fees, even as against the name insured, much less, as against someone other than the named insured. Moreover, Harleysville is seeking reimbursement for investigating a claim which it had a lawful duty to do. (See NCGS §58-63-15(11) c.-*Unfair Claim Settlement Practice--Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies*). Even in this action, Plaintiff has alleged that "[b]y letter dated April 2, 2009, Harleysville notified The Hammocks that it was investigating the cause of the loss and other aspects relating to the Policy." (Complaint, paragraph 55). This predated the Proof of Loss and Examination under Oath of Dr. Gray. Even if Plaintiff could recover damages directly against Dr. Gray, which is contrary to the law, the complaint fails to specify any special damage or expense attributable to any alleged misrepresentation by him.

### III. ALLEGED VIOLATION OF NCGS§ 58-2-161

It is well known that investigative and litigation expenses, including attorneys' fees, are typically borne by the parties. "Under the American Rule, a cornerstone of our jurisprudence for two hundred years, each party is required to bear the cost of his own attorneys' fees absent

5

explicit congressional authorization to the contrary." Blackburn v. Reich, 79 F3d 1375, 1382 (4th Cir. 1996). In Stillwell Enterprises, Inc. v Interstate Equipment Company, 300 NC 286, 289, 266 S.E.2nd 812, 814-815 (1980) the Supreme Court of North Carolina expressed the principle as follows:

> "Certainly in the absence of any contractual agreement allocating the costs of future litigation, it is well established that the non-allowance of counsel fees has prevailed as the policy of this state at least since 1879. See Trust Co. v. Schneider, 235 N.C. 446, 70 S.E.2d 578 (1952); Parker v. Realty Co., 195 N.C. 644, 143 S.E. 254 (1928). Thus the general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute. Hicks v. Albertson, 284 N.C. 236, 200 S.E.2d 40 (1972). Even in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor. Howell v. Roberson, 197 N.C. 572, 150 S.E. 32 (1929); Tinsley v. Hoskins, 111 N.C. 340, 16 S.E. 325 (1892)."

The statute referred to by Plaintiff, NCGS § 58-2-161 is a criminal remedy for insurance fraud. It allows for the Court to consider reasonable costs and attorneys fees as part of the restitution in a criminal proceeding. The only mention of a civil action is the paragraph:

> "In a civil cause of action for recovery based upon a claim for which a defendant has been convicted under this section, the conviction may be entered into evidence against the defendant. The court may award the prevailing party

6

compensatory damages, attorneys' fees, costs, and reasonable investigative costs.

If the prevailing party can demonstrate that the defendant has engaged in a pattern of violations of this section, the court may award treble damages."

It seems clear by implication this statute applies when the person has been convicted of insurance fraud, which has not been alleged in this complaint. Similarly, see <u>Brewer v. Carolina Coach Company</u>, et. al., 253 NC 257, 116 S.E.2d 725 (1960) regarding an action for damages for the alleged procuring of perjured testimony in an arbitration proceeding. In <u>Brewer</u>, the North Carolina Supreme Court recognized that "perjury and subornation of perjury are criminal offenses, subject to punishment" under the criminal statues. *Id.* at 260 and 727. "However, it seems to be the general rule that a civil action in tort cannot be maintained upon the ground that a defendant gave false testimony or procured other persons to give false or perjured testimony." *Id.* at 260, and 727. The Court gave several reasons for the rule, including:

"We think there is a third reason, in that it would multiply and extend litigation if the matter could be re-examined by a new action between a party to the action and a witness therein; and, more than that, witnesses would be intimidated if their testimony is given under liability of themselves being subjected to the expense and annoyance of being sued by any party to the action to whom their testimony might not be agreeable. It would give a great leverage to litigants to intimidate witnesses." *Id*. at 261 and 727,728.

To allow this type of case, particularly prior to resolution of the insurance claim and without any finding of wrongdoing by Defendant Gray, would allow Harleysville to try multiple cases involving the same actual and legal issues, which the law does not support.

7

## **CONCLUSION:**

The complaint fails to state a claim upon which relief can be granted against Defendant, and this action should be dismissed.

THIS the 20th day of December, 2011.

/s/ **John C. Cloninger**
N.C. State Bar 9752
*Attorney for Defendant*
CLONINGER, BARBOUR, SEARSON & JONES PLLC
21 Battery Park Avenue, Suite 201
Asheville, NC 28801
Phone: (828) 252-5555
Facsimile: (828) 232-9158
Email: jack@lawyersasheville.com

## CERTIFICATE OF SERVICE

I hereby certify that on **December 20, 2011**, a copy of the foregoing **Brief in Support of Defendant's Motion to Dismiss** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Brady A. Yntema
David L. Brown
Pinto, Coates, Kyre & Brown, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone:  (336) 282-8848
Facsimile:  (336) 282-8409
byntema@pckb-law.com
dbrown@pckb-law.com
*Attorneys for Plaintiff*

*COPY TO:*   Michael R. Nelson
P.A. State Bar# 65679
Nelson, Levine, deLuca & Horst
518 East Township Line Road
Suite 300
Blue Bell, PA 19422

  **s/ John C. Cloninger**