IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:11cv234

| | |
|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) WILLIAM G. GRAY ) ) Defendant. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 17]; the Magistrate Judge's Memorandum and Recommendation [Doc. 25] regarding the disposition of said motion; and the Plaintiff's Objection to the Memorandum and Recommendation [Doc. 26].

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

The Plaintiff Harleysville Mutual Insurance Company ("Plaintiff") is a Pennsylvania corporation that issued an insurance policy ("the Policy") to The Hammocks, LLC d/b/a Richmond Hill Inn. [Complaint, Doc. 1 at ¶¶ 1, 7]. The Policy provided coverage for the Richmond Hill Inn, which at the time was owned by The Hammocks, LLC. [Id. at ¶¶ 6-7]. The stated policy period was

October 19, 2008, through October 19, 2009. [Id. at ¶ 9]. The Plaintiff, however, contends that the application for insurance submitted by Sarah McCullough, an employee of The Hammocks, LLC, contained a number of false or misleading statements. [Id. at ¶¶ 66-94].

The Defendant William G. Gray ("Defendant") is a resident of North Carolina and a member of The Hammocks, LLC. [Id. at ¶¶ 2, 5]. The Defendant was also the manager at the Richmond Hill Inn during the relevant time period. [Id. at ¶ 6].

On March 19, 2009, one of the buildings at the Richmond Hill Inn caught fire, destroying the right side of the building. [Id. at ¶¶ 12, 14]. The Richmond Hill Inn was closed that day and the Defendant was the only person on the property at the time. [Id. at ¶¶ 47-48]. When the fire department arrived on the scene, they discovered that the building on fire was vacant and secured, and that someone had shut off the sprinkler system. [Id. at ¶¶ 16-18, 23]. The Asheville Buncombe Arson Task Force determined that someone intentionally set the fire. [Id. at ¶ 15].

In addition to the fire that burned the right side of the building, a small fire also occurred in the kitchen on the right side of the building. [Id. at ¶¶ 21-22]. Someone tampered with the cooking stove in the kitchen to allow for a

2

Case 1:11-cv-00234-MR-DSC   Document 28   Filed 07/02/12   Page 2 of 16

gas leak from the stove. [Id. at ¶ 21]. The Plaintiff contends that the Defendant either started the fires in question or hired another individual to set the fires. [Id. at ¶ 24].

After the fire destroyed part of the building, The Hammocks, LLC submitted a claim under the Policy. [Id. at ¶ 54]. As part of the investigation by the Plaintiff into the cause of the loss, the Defendant submitted a Sworn Statement in Proof of Loss ("Proof of Loss"), which the Defendant signed on behalf of The Hammocks, LLC. [Id. at ¶¶ 55-58]. The Proof of Loss included a statement that the loss did not originate by an act, design, or procurement on the part of The Hammocks, LLC. [Id. at ¶ 58].

When called upon by the insurance company to make a sworn statement regarding the loss, The Hammocks, LLC designated the Defendant as the individual to testify on its behalf. [Id. at ¶ 59]. The Defendant then testified under oath that he did not cause the fires at issue. [Id. at ¶¶ 25, 59, 60].

The Plaintiff initiated this suit on September 14, 2011 to recover damages against the Defendant. [Doc. 1]. Specifically, the Complaint asserts claims for intentional burning, fraud, and insurance fraud in violation of North

3

Carolina Gen. Stat. § 58-2-161. On December 20, 2011, the Defendant moved to dismiss the Complaint in its entirety. [Doc. 17].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the Defendant's Motion to Dismiss and to submit a recommendation for its disposition. On March 19, 2012, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that the Motion to Dismiss be granted and that the Plaintiff's Complaint be dismissed with prejudice. [Doc. 25]. The Plaintiff filed a timely Objection to the Memorandum and Recommendation [Doc. 26]. The Defendant has responded to the Plaintiff's Objection, urging the Court to adopt the Magistrate Judge's Recommendation. [Doc. 27].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to Objections to Magistrate Judge's Memorandum and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party

4

must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Rule 12(b)(6) Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1937).

## III. DISCUSSION

### A. Intentional Burning

In his Memorandum and Recommendation, the Magistrate Judge concluded that any claim for the intentional burning of the Richmond Hill Inn lies as a defense to The Hammocks LLC's claim to recovery under the Policy and not as an independent cause of action against the Defendant as the alleged tortfeasor. [Doc. 25 at 7]. Accordingly, the Magistrate Judge recommended that the Plaintiff's claim against the Defendant for intentional burning be dismissed for failure to state a claim. [Id.].

The Plaintiff now objects to the Magistrate Judge's recommendation, arguing that it is a "basic tenet of North Carolina law that an injured party can pursue a claim to recover damages caused by the intentional torts of others." [Doc. 26 at 6]. Having incurred losses from the Defendant's intentional destruction of the insured's property, the Plaintiff contends that it has a right in tort, separate and distinct from the coverage defense it has raised against the insured, to pursue recovery against the Defendant. [Id. at 6-7].

The only authority cited by the Plaintiff in support of its novel position is the unpublished decision of Schaffner v. USAA Casualty Insurance Co., No. COA04-1041, 2005 WL 1949877 (N.C. Ct. App. Aug. 16, 2005). In Schaffner,

the defendant insurance company brought a counterclaim against the insured for violating the terms of the insurance policy by intentionally burning his house and car. Id. at *2. As the Magistrate Judge correctly noted [Doc. 25 at 7], Schaffner involves the application of a defense of intentional burning to a claim for recovery under an insurance policy. It does not hold, as contended by the Plaintiff, that an insurer may maintain an independent cause of action against a third party tortfeasor for the intentional destruction of property of another. Schaffner, therefore, does not provide support for the Plaintiff's claim.

For the foregoing reasons, the Court concludes that the Plaintiff's claim for intentional burning against the Defendant fails to state a claim and therefore should be dismissed with prejudice. The Plaintiff's Objections as to this claim are overruled.

**B.    Fraud**

In addressing the fraud claim, the Magistrate Judge recognized that the Plaintiff may proceed against the Defendant to the extent that the Defendant personally committed fraud in making false representations to the Plaintiff regarding the origin of the fire or in making false representations in the application for insurance. [Doc. 25 at 8-9]. The Magistrate Judge concluded,

8

however, that the Plaintiff's fraud claim fails as a matter of law because (1) the Complaint alleges that the misrepresentations in the insurance application were made by someone other than the Defendant and fails to allege any facts that would render the Defendant liable for these misrepresentations and (2) the Complaint fails to allege any facts that would give rise to a claim that the Plaintiff was actually deceived or otherwise relied upon the Defendant's misrepresentations regarding the origin of the fire. [Id. at 9-10]. The Plaintiff objects to both of these conclusions.

With respect to the alleged misrepresentations made in the insurance application, the Plaintiff argues that the Magistrate Judge failed to consider the specific allegations in the Plaintiff's Complaint that establish the material misrepresentations made in the insurance application and "how those misrepresentations were made at Defendant Gray's direction and with his permission." [Doc. 26 at 10 (citing Complaint, Doc. 1 at ¶¶ 66-94]. These allegations, the Plaintiff contends, state a plausible claim for fraud against the Defendant.

In the Complaint, the Plaintiff alleges that the insurance application at issue was completed and submitted by Sarah McCullough, an employee of The Hammocks, LLC [Complaint, Doc. 1 at ¶¶ 66, 68], but that "[a]t all

9

relevant times, [the Defendant] was responsible and/or liable for the representations made in the application as they were made with his permission and at his direction" [Id. at ¶ 94]. In asserting that the alleged misrepresentations were made with the Defendant's "permission and at his direction," the Complaint references Volume I, page 67 of the Defendant's Examination Under Oath ("EUO"), which is attached as an exhibit to the Plaintiff's Complaint, and in which the Defendant testified as follows:

> Q  What is Sarah McCullough's role with your organization?
>
> A  She's the bookkeeper.
>
> *   *   *
>
> Q  Did you empower her to make certain decisions on behalf of the organization?
>
> A  You know, things to do with paying the bills and that type of stuff.
>
> Q  So she had the authority to pay the bills?
>
> A  Yes.
>
> Q  Did she have the authority to have interactions with your insurance agent?
>
> A  Right. She did.
>
> Q  Does that right mean yes?

10

A     Yes.

[EUO, Ex. C to Complaint, Doc. 2 at 67].  Contrary to the Plaintiff's argument, this testimony does not plausibly support the Plaintiff's allegation that the Defendant permitted and/or otherwise directed that the false representations be made in the application for insurance.  The Complaint fails to allege that the misrepresentations in the insurance application were made with the Defendant's permission or at his direction.  Accordingly, the Complaint fails to state a plausible claim for fraud against the Defendant arising out of the allegedly fraudulent representations made in the insurance application, and this portion of the Plaintiff's fraud claim must be dismissed.

The Plaintiff also objects to the Magistrate Judge's recommendation of dismissal of its fraud claim based on the misrepresentations made during Plaintiff's investigation by the Defendant as to the cause of the fire. Specifically, the Plaintiff argues that the Complaint sufficiently states a claim for fraud because it specifically alleges that the Plaintiff relied on the Defendant's misrepresentations in undertaking "a significant investigation into the cause of the Fire ...."  [Doc. 26 at 12-13].

In asserting its right to maintain a claim against the Defendant, the Plaintiff defines its "losses" not as the costs of paying the insured's fire loss

11

claim -- a claim which the Plaintiff has to date denied and which denial is the subject of other litigation currently pending before this Court, see The Hammocks, LLC v. Harleysville Mut. Ins. Co., Civil Case No. 1:10cv22 (W.D.N.C.).[1]  Rather, the Plaintiff defines its "losses" as the "claims handling costs, investigation and litigation costs, and fees incurred to date" arising from the Defendant's alleged arson.  [See Complaint, Doc. 1 at ¶ 108].  The Plaintiff, however, offers no authority under North Carolina law or otherwise to support this novel contention.  The Plaintiff concedes that it had a duty to respond to the Proof of Loss submitted by the insured and to investigate the insurance claim.  [Doc. 26 at 13].  The Court can find no support in North Carolina law for the proposition that a casualty insurer may maintain a cause of action against a person who is not a party to the insurance contract for the costs of investigating a claimed loss.  The only exception is a claim for insurance fraud pursuant to N.C. Gen. Stat. § 58-2-161 (discussed in further detail below) which requires that a defendant first be convicted of criminal insurance fraud before any civil action for insurance fraud may be brought.

For all these reasons, the Plaintiff's fraud claim is dismissed.  The Plaintiff's Objections therefore are overruled.

---

[1] The Plaintiff does not make any claim for indemnity against the Defendant, as the Plaintiff to date has made no payment to the insured for its loss.

12

### C. N.C. Gen. Stat. § 58-2-161

The Plaintiff's third and final claim is based upon N.C. Gen. Stat. § 58-2-161, which provides, in pertinent part, as follows:

> Any person who, with the intent to injure, defraud, or deceive an insurer or insurance claimant:
>
> (1) Presents or causes to be presented a written or oral statement, including computer-generated documents as part of, in support of, or in opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false or misleading information concerning any fact or matter material to the claim, or
>
> (2) Assists, abets, solicits, or conspires with another person to prepare or make any written or oral statement that is intended to be presented to an insurer or insurance claimant in connection with, in support of, or in opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false or misleading information concerning a fact or matter material to the claim is guilty of a Class H felony. Each claim shall be considered a separate count. Upon conviction, if the court imposes probation, the court may order the defendant to pay restitution as a condition of probation. In determination of the amount of restitution pursuant to G.S. 15A-1343(d), the reasonable costs and attorneys' fees incurred by the victim in the investigation of, and efforts to recover damages arising from, the claim, may be considered part of the damage caused by the defendant arising out of the offense.

> ***In a civil cause of action for recovery based upon a claim for which a defendant has been convicted under this section***, the conviction may be entered into evidence against the defendant. The court may award the prevailing party compensatory damages, attorneys' fees, costs, and reasonable investigative costs. If the prevailing party can demonstrate that the defendant has engaged in a pattern of violations of this section, the court may award treble damages.

N.C. Gen. Stat. § 58-2-161(b) (emphasis added). In the Memorandum and Recommendation, the Magistrate Judge concluded that this statute provides for the recovery of damages, attorneys' fees, costs, and investigative costs only *after* an individual is convicted of criminal insurance fraud. [Doc. 25 at 11]. Because the Defendant in the present case has not been convicted of insurance fraud to date, the Magistrate Judge recommended that this claim also be dismissed. [Id. at 12].

The Plaintiff objects to the Magistrate Judge's Recommendation, arguing that the statute "merely provides that a criminal conviction under the statute is admissible evidence in a civil action based on the statute" and does not require a conviction before a civil action can be brought. [Doc. 26 at 14-15]. Even if a criminal conviction is a condition precedent to any civil recovery, the Plaintiff argues that dismissing its claim with prejudice would be premature, as the criminal investigation of the fire is still ongoing.

14

Accordingly, the Plaintiff argues that, at a minimum, the Magistrate Judge's Recommendation should be modified to allow the Plaintiff to pursue a civil action for insurance fraud pursuant to N.C. Gen. Stat. § 58-2-161 upon the conclusion of the criminal investigation and prosecution, if any, of the Defendant. [Id. at 15].

The Court agrees with the Magistrate Judge that the language of N.C. Gen. Stat. § 58-2-161 is clear: the statute allows for a civil cause of action for insurance fraud, but *only after* the defendant has been convicted of criminal insurance fraud. See N.C. Gen. Stat. § 58-2-161(b) ("In a civil cause of action for recovery based upon a claim *for which a defendant has been convicted under this section*...")(emphasis added). Accordingly, the Plaintiff's contention that it may maintain an action under this statute even though the Defendant has not been convicted of insurance fraud is without merit. The Court, however, will dismiss this claim without prejudice so that the Plaintiff may renew its claim in the event that the Defendant is prosecuted and found guilty of insurance fraud in the future.

## IV. CONCLUSION

Having conducted a *de novo* review of those portions of the Memorandum and Recommendation to which objections were filed, the Court

15

concludes that the Magistrate Judge's proposed conclusions of law are supported by and are consistent with current case law. In the exercise of its discretion, however, the Court will dismiss the Plaintiff's claim for violation of N.C. Gen. Stat. § 58-2-161 without prejudice.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Objection to the Magistrate Judge's Memorandum and Recommendation [Doc. 26] is **SUSTAINED IN PART** and **OVERRULED IN PART**, and the Memorandum and Recommendation of the Magistrate Judge [Doc. 25] is **ACCEPTED IN PART** and **REJECTED IN PART**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 17] is **GRANTED**, and the Plaintiff's claims for intentional burning and fraud are hereby **DISMISSED WITH PREJUDICE**. The Plaintiff's claim for insurance fraud in violation of N.C. Gen. Stat. § 58-2-161 is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Signed: June 29, 2012

Martin Reidinger
United States District Judge